Yin Fen FLORES, Petitioner,

v.

IMMIGRATION AND NATURALIZATION SERVICE, Respondent.

No. 94–70178.

United States Court of Appeals, Ninth Circuit.

Submitted Sept. 13, 1995.

Decided Sept. 26, 1995.

*Kentucky Fried Chicken,* 51 F.3d 805, 809 (9th Cir.1994). The district court's explanation of the fee award is sufficient.

Donald Ungar, Simmons, Ungar, Helbush, Steinberg & Bright, San Francisco, CA, for petitioner.

Kristen A. Giuffreda, United States Department of Justice, Office of Immigration Litigation, Washington, DC, for respondent.

Before CHOY, BEEZER and THOMPSON, Circuit Judges.

CHOY, Circuit Judge:

Yin Fen Flores, a.k.a. Eileen York, a native and citizen of Taiwan, appeals the decision of the Board of Immigration Appeals ("BIA"), affirming the Immigration Judge's ("IJ") denial of Flores's request for suspension of deportation pursuant to section 244(a)(1) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1254(a)(1). We have jurisdiction pursuant to 8 U.S.C. § 1105a(a).

I

Flores first came to the United States in 1980. She married an American citizen, Ernest Marvin Flores, and on the basis of that marriage, was granted permanent resident status in 1981. On February 15, 1990, the INS initiated deportation proceedings against Flores by issuing an Order to Show Cause ("OSC"). The OSC charged Flores with obtaining a visa through a fraudulent marriage and entering the United States for the purpose of working here without the required labor certification. Flores applied for the relief of suspension of deportation on March 11, 1991. After a hearing, the IJ found Flores deportable as charged.

The IJ concluded that Flores was statutorily ineligible for suspension of deportation because: (1) she could not establish seven years continuous physical presence in the United States due to a meaningful absence of four months between September of 1985 and January of 1986; (2) she was unable to establish good moral character due to a March 30, 1987 criminal conviction for welfare fraud; and (3) she failed to establish extreme hardship to herself and could not establish hard-

ship to her American-born children because her parental rights had been terminated.

Flores appealed the IJ's decision to the BIA. The BIA's decision, dated March 24, 1994, determined that Flores satisfied the continuous seven-year physical presence requirement by her continuous presence in the United States from 1987 to 1994, the years accrued while her non-frivolous appeal was pending. The BIA, however, used the 1984–91 period, calculated from the date of her application for suspension of deportation, to determine that Flores did not meet the moral character requirement because of her 1987 welfare fraud conviction. In the alternative, the BIA concluded that Flores did not merit suspension of deportation in the exercise of discretion. Flores timely appeals.

## II

 We review for substantial evidence the BIA's determination as to whether an applicant has established seven years of continuous physical presence. *See Hernandez–Luis v. INS,* 869 F.2d 496, 498 (9th Cir.1989). We review de novo per se determinations of moral character under 8 U.S.C. § 1101(f), *see Abedini v. INS,* 971 F.2d 188, 190–91 (9th Cir.1992) ("We review de novo the Board's. determination of purely legal questions regarding the requirements of the Immigration and Nationality Act."), while we review other moral character determinations for an abuse of discretion, *see Torres–Guzman v. INS,* 804 F.2d 531, 533 (9th Cir.1986). Finally, we review the BIA's determination as to the finding of extreme hardship for an abuse of discretion. *See Alvarez–Madrigal v. INS,* 808 F.2d 705, 706 (9th Cir.1987).

## III

Section 244(a)(1) of the INA provides that the Attorney General in her discretion may suspend deportation and adjust the status of an otherwise deportable alien who "has been physically present in the United States for a continuous period of not less than seven years *immediately preceding the date of such application* [for suspension of deportation], and proves that *during all of such period* he was and is a person of good moral

character. . . ." 8 U.S.C. § 1254(a)(1) (emphasis added).

Flores contends that the BIA erred in concluding that she was statutorily ineligible for suspension of deportation because she failed to prove that she was a person of good moral character during the seven years immediately preceding her application for suspension of deportation. Flores argues that the same seven years used to determine her continuous physical presence in the United States should be used to determine her moral character.

 A fair reading of the statute dictates that the same period of seven years, which is used to determine an individual's continuous physical presence in the United States, be used to determine the establishment of good moral character. *See* 8 U.S.C. § 1254(a)(1). However, § 1254(a)(1) also clearly states that the date of the application for suspension of deportation is the date which is used to calculate the seven-year time period. We conclude, therefore, that the BIA erred in counting the time accrued during Flores's appeal towards establishing the seven-year continuous presence requirement.

According to Flores, *Sida v. INS,* 783 F.2d 947, 950 (9th Cir.1986), stands for the proposition that the seven-year continuous presence requirement under § 1254(a)(1) can be satisfied by time accrued pursuing a meritorious appeal, regardless of whether a petitioner had applied for suspension of deportation. Indeed, the BIA agreed with this argument and found that Flores had satisfied the seven-year continuous physical presence requirement.

In *Sida,* we stated that should petitioners file yet another petition to reopen, "there should be no impediment to counting the time accrued during the pendency of their [non-frivolous] appeals." *Id.* We based our statement upon *INS v. Rios–Pineda,* 471 U.S. 444, 450–51, 105 S.Ct. 2098, 2102–03, 85 L.Ed.2d 452 (1985), in which the Supreme Court held that time accrued during meritless appeals could not count towards the seven-year requirement. The Supreme Court, however, left open the issue of whether time accrued pursuing *meritorious* ap-

peals could count towards the seven-year requirement.

Our statement in *Sida* regarding time accrued during appeals must be read in its context. The petitioners in *Sida* had not yet applied for suspension of deportation. Rather, they were appealing the BIA's denial of their petition to reopen proceedings to enable them to do so. Therefore, the appellants in *Sida* did not fall within the literal terminology of § 1254(a)(1), which states that the seven-year physical presence requirement must be satisfied by the time the petitioner files her application for suspension of deportation.[1]

The BIA also cited *Dill v. INS*, 773 F.2d 25, 29 (3d Cir.1985), to support its holding that Flores had satisfied the seven-year continuous presence requirement through time accrued while pursuing a non-frivolous appeal. As in *Sida*, however, the petitioner in *Dill* had not filed an application for suspension of deportation and therefore, the time accruing during the appeal process was time spent in this country "preceding the date of such application...." 8 U.S.C. § 1254(a)(1).

*Sida* and *Dill* illustrate that time accrued during the pursuit of non-frivolous appeals may count towards § 1254(a)(1) seven-year continuous physical presence requirement as long as the petitioner has not filed an application for suspension of deportation. Once the petitioner files an application for suspension of deportation, the express language of § 1254(a)(1) controls, and the seven-year period is fixed by the date of the application. *See INS v. Phinpathya*, 464 U.S. 183, 188 n. 6, 104 S.Ct. 584, 588, 78 L.Ed.2d 401 (1984) (rejecting respondent's argument that her

satisfaction of the seven-year continuous physical presence requirement, by including the years accrued during the pendency of her non-frivolous appeals, moots the issue of whether her absence was meaningfully interruptive of her stay during the seven years immediately preceding her application for suspension of deportation), *superseded by statute on other ground as stated in, INS v. Hector*, 479 U.S. 85, 90–91 n. 7, 107 S.Ct. 379, 382 n. 7, 93 L.Ed.2d 326 (1986); *see also Kamheangpatiyooth v. INS*, 597 F.2d 1253 (9th Cir.1979) (calculating the seven-year period from the time of the application for suspension of deportation and not counting the time after the filing even though the appeal was not frivolous). In this way, we can ensure that "[t]he purpose of an appeal is to correct legal errors which occurred *at the initial determination of deportability* ... [and] not to permit an indefinite stalling of physical departure in the hope of eventually satisfying legal prerequisites." *Rios–Pineda*, 471 U.S. at 450, 105 S.Ct. at 2102 (emphasis added).

 Flores applied for suspension of deportation on March 11, 1991, fixing the period between 1984 to 1991 as the time frame during which she must prove continuous physical presence and good moral character. The BIA found that Flores's departure from this country for a four-month period in late 1985 through early 1986 meaningfully interrupted her stay in the United States. The BIA did not err in this conclusion. Because her absence from the United States fell within the seven-year period immediately preceding the date of her application for suspension of deportation, Flores failed to establish her

---

1. We also relied upon *Alvarez–Ruiz v. INS*, 749 F.2d 1314 (9th Cir.1984), to adjudicate *Sida*. Alvarez–Ruiz argued that he had accumulated the necessary seven years of continuous presence by counting the time spent on appeal, even though he had applied for suspension of deportation five years after his last entrance into the United States. Alvarez–Ruiz left the country in 1976 for the last time before he applied for suspension of deportation in 1981, and his appeal was decided in 1984. *Id.* at 1315. Under a literal reading of § 1254(a)(1), Alvarez–Ruiz could not satisfy the continuous presence requirement.

Nevertheless in *Sida*, we stated: "We assumed in *Alvarez–Ruiz* that the BIA could count the time

accrued on appeal." *Sida*, 783 F.2d at 949. We never stated directly in *Alvarez–Ruiz* that time accrued during an appeal could count towards the seven-year requirement where the petitioner had applied for suspension of deportation. In response to Alvarez–Ruiz's request to direct the BIA to reopen his case and evaluate his claim on its merits, we responded, "Such an order would be inappropriate. We do not know whether Alvarez–Ruiz has been continuously physically present in the United States since his return in 1976...." *Alvarez–Ruiz*, 749 F.2d at 1315. Therefore, we do not consider *Alvarez–Ruiz* to be inconsistent with our holding today.

continuous physical presence in the United States. Furthermore, Flores's 1987 conviction for welfare fraud,.a crime of moral turpitude, precluded her from demonstrating good moral character during the relevant time period. *See Miller v. INS,* 762 F.2d 21, 24 (3d Cir.1985) (holding that conviction during the relevant period for welfare fraud, a crime of moral turpitude, precludes the alien from being eligible for suspension of deportation under § 1254(a)(1)); *see also* 8 U.S.C. § 1101(f)(3); 8 U.S.C. § 1182(a)(2)(A)(i).

Because Flores is statutorily ineligible for suspension of deportation, we do not address whether the BIA abused its discretion in denying her application. *See Rios–Pineda,* 471 U.S. at 445–46, 105 S.Ct. at 2099–2100 (stating that the applicant must be statutorily eligible under § 1254(a)(1) before discretion can be exercised). We therefore affirm the BIA's decision affirming the IJ's denial of Flores's request for suspension of deportation.

## IV

We **REVERSE** the BIA's finding that Flores satisfied the seven-year continuous residence requirement on the basis that the BIA used the wrong seven-year period.

We **AFFIRM** the BIA's finding that Flores failed to establish good moral character within the seven-year period immediately preceding the application for suspension of deportation.

Therefore, we **AFFIRM** the BIA's conclusion that Flores is statutorily ineligible for suspension of deportation.

We award costs on this appeal to Respondent Immigration and Naturalization Service.

**REVERSED IN PART; AFFIRMED IN PART.**